UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH


FRANKLIN SUTTON
    Plaintiff

v.                                                                                                                                                                       No. 5:04CV-233-J

JO ANNE B. BARNHART
    Commissioner of Social Security
    Defendant


**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

      This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Dennis Fentress. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 10 and 11, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

      The final decision of the Commissioner was rendered on July 9, 2004, by administrative law judge (ALJ) James Craig. In support of his decision denying Title II and Title XVI benefits, Judge Craig entered the following numbered findings:

      1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

      2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

      3. The claimant has a number of musculoskeletal and neurological complaints, status-post closed head injury, but without firm objective findings; mild asthma; borderline intellectual functioning; affective disorder; and somatoform pain disorder, impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

4. The claimant does not have a medically determinable impairment which meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to perform a range of light work activity. The claimant can lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently and push/pull within these weights. The claimant can never perform repetitive pushing/pulling with the upper or lower extremities. The claimant can sit, stand and/or walk, about six hours each, as needed in an eight-hour workday. The claimant has no significant postural limitations. The claimant has a moderate limitation affecting his ability to hear. He should never be exposed to moving/mechanical parts, electrical shock, exposed heights and noxious fumes or odors, but has no other environmental limitations. The claimant cannot carry out detailed instructions and he cannot make complex decisions. The claimant is limited to jobs which require no more than minimal contact with co-workers and the public. The claimant is precluded from jobs which require reading, writing, and math, and he cannot perform quota based or production jobs.

7. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

9. The claimant has a "limited education" and probable illiteracy (20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform a significant range of unskilled, light work (20 CFR §§ 404.1567 and 416.967).

12. Although the claimant's non-exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.16 and Social Security Rulings 85-15 and 85-16, as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include laundry folder, 50,000 jobs in the United States; janitorial jobs, 195,000 jobs in the United States; and, office machine operator (i.e., copier), 150,000 jobs in the United States.

13. The claimant is not "disabled" as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Administrative Record (AR), pp. 29-30).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's

decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work.

**STEP #5** If the claimant makes a <u>prima facie</u> showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

### Discussion

On or about August 6, 2000, the plaintiff was 32 years old and worked for the National Guard. He was on a steel trailer, some equipment broke loose, and knocked him backward, resulting in cervical strain, a fractured skull, and a closed head injury (AR, p. 369). Thereafter, he experienced black-outs and seizures, headaches, right-sided visual and hearing disturbances, numbness in the right upper and lower extremities, memory loss, and, as we shall see, possible intellectual impairment. The plaintiff was denied compensation by the National Guard for his injury (AR, p. 369). While in school, he attended special education classes, and the ALJ acknowledged that he is "probably illiterate" (AR, p. 27).

### I

The plaintiff's first numbered contention is that "the administrative law judge failed to properly determine if Listing Section 12.05C had been met or equaled" (Docket Entry No. 10, p. 5). The burden of proof at the third "Listing" step of the sequential evaluation process is upon the claimant. To be entitled to a conclusive presumption of disability, Listing § 12.05(C)

5

("mental retardation") requires substantial evidence of each of the following:

    1. The claimant must suffer from "significantly subaverage general intellectual functioning."

    2. The cognitive deficiency must result in "deficits in adaptive functioning."

    3. The evidence must "demonstrate[] or support[] onset of the impairment before age 22."

    4. The claimant must have a "valid verbal, performance, or full scale IQ of 60 through 70."

    5. The claimant must suffer from a "physical or other mental impairment imposing an additional and significant work-related limitation of function."

The test is conjunctive. The first, second, and third requirements are stated in the introductory paragraph to Section 12.05(C) at Section 12.00(A), and the fourth and fifth requirements are stated in Section 12.05(C) itself. The plaintiff does not allege that 12.05(A) or (B) is applicable. It is settled that the threshold "introductory paragraph" requirements apply no less than the requirements of the Listing itself. See *Foster v. Commissioner*, 279 F.3d 348 (6th Cir., 2001). We shall consider the five (5) factors above. As stated earlier, the plaintiff must establish by substantial evidence each of the following:

### 4. Whether the Plaintiff Has a Valid IQ Score of 60-70

The Commissioner states that "[i]t is uncontested that Plaintiff obtained a full scale IQ score of 68 on a testing [by Bruce Amble, Ph.D.] on September 26, 2001. (Tr. 209) Such score satisfies one of the criteria of the listing" (Docket Entry No. 11, p. 4). However, the ALJ found that the score was of "questionable validity" because "[a]ccording to Dr. Amble, the clamant had some visual problems with test taking and was not wear[ing] corrective lenses, so this could have adversely impacted on his performance" (AR, p. 26). The magistrate judge concludes that the ALJ had a substantial basis for concluding that the IQ score had not been demonstrated to be "valid."

6

### 5. Whether the Plaintiff Suffers from an Impairment
### Imposing an Additional and Significant Work-Related Limitation

The ALJ acknowledges that the plaintiff suffers from a number of [mental and physical work-related] "impairments considered 'severe.'" ALJ's Finding No. 3. An impairment causing an "additional and significant" limitation for purposes of the Listing is the same as a "severe" impairment as contemplated by the second step of the sequential evaluation process. See Listing § 12.00A ("For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe " impairment(s), as defined in §§ 404.1520(c) and 416.920(c)"). Therefore, the impairments acknowledged by the ALJ are "additional and significant."

### 1. Whether the Plaintiff Has
### Significant Subaverage General Intellectual Functioning

Low IQ test results alone will not satisfy the requirement of "significantly subaverage general intellectual functioning." The regulations provide that "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." Listing § 12.00(D)(6)(a). Hence, the Commissioner may reject IQ test results as inconsistent with the record as a whole. *Carrington v. Commissioner*, 1999 WL 1206886 (6th Cir.). In her fact and law summary, the defendant cites various secondary sources in support of a conclusion that whether "mental retardation," as opposed to "borderline intellectual functioning" or a "learning disorder," is present is a "complex, multi-step process" compounded by the fact that some individuals "may not test well due to socioeconomic

7

factors" (Docket Entry No. 11, pp. 5 and 7). In this case, in light of the low IQ score of 68 and the record as a whole, the nonexamining state agency program psychologist, Mary Thompson, Ph.D., opined as follows (AR, p. 217):

> Claimant is a 33 year old male with history of special education and prior testing as a child in the borderline range. Current testing indicates borderline to mentally retarded IQ. Adaptive functioning has been higher. Claimant has been in the National Guard and worked as a diesel mechanic. Given higher adaptive functioning, conditions of 12.05(C) are not met.

The ALJ found as follows (AR, pp. 25 and 26):

> [Dr. Thompson] opined the diagnostic criteria for mental retardation was *(sic.)* not met and that the claimant functions in the borderline range of intellectual functioning. It was determined the claimant's impairments were "severe," but not of a level of severity to preclude the performance of simple, routine types of jobs (Exhibits 4F and 6F).
> ...
> [T]he Administrative Law Judge does not find the claimant is mentally retarded. ... The claimant's history of military service since 1985, social and work history are not consistent with an individual who is mentally retarded.

The ALJ had a substantial basis for concluding that the evidence does not establish that the plaintiff is afflicted with subaverage general intellectual functioning.

### 3. Whether the Plaintiff's Impairment Commenced before He was 22 Years Old

The plaintiff has failed to produce school records or other evidence of an IQ of 70 or less during the development period prior to age 22. On the contrary, the record suggests that the plaintiff's IQ of 68 may be attributable to a dip of at least three IQ points following the injury in August of 2000. There is no evidence that the impairment onset occurred prior to the plaintiff's twenty-second birthday.

8

### 2. Whether the Plaintiff's Cognitive Deficiency
### Imposes Deficits of Adaptive Functioning

As noted above, Dr. Thompson found "higher adaptive functioning," and the ALJ concluded that the plaintiff's work history is incompatible with longstanding mental retardation. Therefore, the ALJ had a substantial basis for concluding that the second requirement of the Listing was not satisfied. Because the plaintiff has failed to establish by substantial evidence the existence of <u>all</u> five factors, the ALJ was justified in concluding that the requirements of Listing § 12.05(C) had not been met.

### II

The plaintiff's second numbered contention is that "the treating neurosurgeon's assessment would warrant a finding of disability." On April 12, 2004, Sean McDonald completed the Medical Assessment of Ability to Do Work-Related Activities (Physical) form (AR, pp. 426-427). Dr. McDonald found as follows:

1. The plaintiff can lift/carry no more than ten pounds due to "status post closed head injury with persistent myofascial pain in the posterior cervical and occipital headache." The plaintiff's occipital lobe contusion was found to be consistent with his "intermittent blurriness and visual scotomata [] noted on ophthalmologic exam."

2. The plaintiff can stand/walk for only four hours total and one hour without interruption due to "symptoms of unsteadiness of gait following occipital closed head injury and some associated concerns regarding exposure to any unprotected heights."

3. The plaintiff's ability to sit is unaffected by his impairment.

4. The plaintiff can only occasionally engage in postural activities such as climbing, balancing, stooping, crouching, kneeling, and crawling due to "persistent cervical myofascial spasm and difficulty with balance that would preclude his exposure to unprotected heights and difficulties balancing."

"Sedentary" work "involves lifting no more than 10 pounds at a time." 20 C.F.R. § 404.1567(a). "Light" work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and generally requires a "good deal of walking or standing." 20 C.F.R. § 404.1567(b). According to Social Security Ruling (SSR) 83-10:

> Relatively few unskilled light jobs are performed in a seated position. Since frequent lifting or carrying requires being on one's feet up to two thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.

Dr. McDonald found that the plaintiff can lift/carry no more than ten pounds and can stand/walk for a total of only four hours. The ALJ found that the plaintiff is limited to unskilled work. Finding No. 10. Therefore, Dr. McDonald's findings, if accepted, would preclude all but an insignificant number of "light" jobs. The vocational expert (VE) testified that the plaintiff would be unable to perform any "sedentary" jobs because "he can't meet production quotas and he can't be involved in jobs that require reading and writing" (AR, pp. 495-496). In light of this testimony, the magistrate judge concludes that, if accepted, Dr. McDonald's finding would require a conclusion of disability.

The so-called "treating physician" rule mandates that a treating source's medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2). The rule is grounded in the treating source's greater

10

familiarity with the claimant's impairments over time and the presence of an affirmative duty to treat them. "[T]he opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir., 1987).

As noted above, Dr. McDonald based his disabling findings with respect to the plaintiff's abilities to lift/carry and stand/walk upon "occipital closed head injury" / "occipital lobe contusion" resulting in "unsteadiness of gait" and other symptoms such as hearing loss, eyesight loss, numbness in the arms and legs, head pain and headache, and memory loss (AR, pp. 426-427 and 184). The brain contusion was verified by objective medical testing. The most recent MRI in the administrative record from August of 2001, for example, revealed the following significant findings (AR, p. 184):

> Multiple sequences from an MRI of the brain [show] continued mild abnormal signal posteriorly along the occipital region. It also extends along the convexity. Sulci are seen to extend through this region, and this represents signal artifact.

In addition, to the closed head injury, a cervical spine x-ray from November of 2003, revealed "early cervical spondylosis" as evidenced by the presence of "neural foramen [that] are widely patent on oblique view" (AR, p. 424). Consistent with these objective findings, Dr. McDonald considered the plaintiff to be a "candidate for an occipital nerve block," which the plaintiff did not receive due to lack of funds (AR, p. 183). The magistrate judge concludes that Dr. McDonald's disabling findings were supported by adequate objective medical data and were entitled to controlling weight. For the reasons indicated above, this dictates a conclusion that the plaintiff is limited to "sedentary" work, which, in turn, requires a finding of disability. A remand for calculation and payment of past-due benefits is the appropriate remedy in this case because

"all essential factual issues have been resolved and the record adequately establishes [the] plaintiff's entitlement to benefits." *Faucher v. Commissioner*, 17 F.3d 171, 176 (6th Cir., 1994).

The ALJ declined to give controlling weight to Dr. McDonald's findings because he apparently questioned whether Dr. McDonald was a treating source in that "Dr. McDonald has not seen or treated the claimant since December 2002, nearly one and one-half years prior to the April 2004 assessment" and because the ALJ characterized the MRI and other objective test results as "normal" (AR, p. 24).  20 C.F.R. § 404.1502 defines "treating source," in part, as follows:

> Generally, we will consider that you have an ongoing treatment relationship [when] you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).  We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals ... to be your treating source....

The ALJ's suggestion that Dr. McDonald was not a treating source and his characterization of the objective test results as "normal" are unpersuasive.

The magistrate judge observes, in passing, that the substantial weight of the evidence apparently militates a conclusion of disability independently of Dr. McDonald's findings. "Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions."  SSR 83-10.  The ALJ acknowledged that the plaintiff, who is right-hand dominant, suffers from "episodes of right-sided symptoms including feeling dead and weak in the right arm" following his closed head injury as well as "decreased flexion of the 5th digit of the right hand, residuals from a childhood injury" (AR, pp. 22 and 485-486).  Therefore, the plaintiff's lack of job skills together with his apparent lack of good use of the hands and fingers would require a conclusion of disability.

12

The undersigned further observes that, in the event the court rejects the foregoing judicial conclusions of disability, a remand for further development of the medical evidence pertaining to the plaintiff's physical limitations is nevertheless required in this case. This is because, having rejected Dr. McDonald's assessment and having concluded that the "opinions of the program physicians [pertaining to the plaintiff's physical limitations] are not persuasive," the ALJ simply had no medical basis for concluding that an individual with the plaintiff's medical profile can perform "light" work. As a lay individual, an ALJ "is simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Commissioner*, 172 F.3d 31, 35 (1st Cir., 1999). "[L]ay intuitions about medical phenomena are often wrong." *Schmidt v. Secretary*, 914 F.2d 117, 118-119 (7th Cir., 1990).

### III

The plaintiff's third and final numbered contention is that "the administrative decision is based upon inadequate and insufficient vocational evidence" (Docket Entry No. 10, p. 18). The plaintiff contends that the ALJ's finding that he cannot carry out "detailed instructions" and cannot "make complex decisions" (Finding No. 6) is incompatible with the requirements of two of the three jobs noted in Finding No. 12 based upon information contained in the Dictionary of Occupational Titles (DOT). Therefore, according to the argument, "there would only be one occupation in the entire United States that Mr. Sutton could perform," and 195,000 such jobs in the national economy are an insignificant number.

The magistrate judge concludes that the argument is unpersuasive for at least three reasons. First, the VE did not testify that there were "only" three jobs consistent with the hypothetical. The hypothetical identified representative jobs. Second, the plaintiff has failed to cite any authority for

13

the proposition that 195,000 jobs are an insignificant number. While the plaintiff argues that 195,000 is a small number in light of the approximate 200 million jobs in the national economy, this type of numerical division and ratio comparison is not among the factors recognized in *Hall v. Secretary*, 837 F.2d 272 (6th Cir., 1988), for making the fifth-step "significance" determination. Third, the DOT identifies two of the three jobs in question as requiring "detailed but uninvolved written or oral instructions" (AR, pp. 470-472). As a lay person, the plaintiff does not have the expertise to conclude that an inability to carry out detailed instructions or make complex decisions is vocationally equivalent to an inability to carry out detailed but uninvolved instructions. The VE testified that his testimony was consistent with the information contained in the DOT, and there is no persuasive reason to doubt this testimony (AR, p. 496). The plaintiff's final contention is unpersuasive.

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter be REMANDED to the Commissioner for calculation and payment of past-due Title II and/or Title XVI benefits based upon the Commissioner's prior final decision of lack of disability on or about October 9, 2001 (AR, pp. 35 and 64), the plaintiff's present applications filed on October 18, 2002, and his alleged onset of disability on August 6, 2000.

## NOTICE

Pursuant to 28 U.S.C. § 636 and Fed.R.Civ.P. 6(e), the parties shall have thirteen (13) days from the date of notice of electronic filing to file written objections to the foregoing report with the Clerk of Court. The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. A party may file a response to another party's objections within ten (10) days after being served a copy thereof. Fed.R.Civ.P. 72(b). A copy of the objections shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).